J-A09022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.D. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1225 WDA 2020 |

Appeal from the Order Entered October 20, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No.TPR CP-02-AP-11-2020

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 8, 2021**

C.D. (Child) appeals, by and through his attorney, the trial court's order denying the petition of the Allegheny County Office of Children, Youth and Families (CYF) to involuntarily terminate the rights of H.H. (Mother), pursuant to the Adoption Act.[1,2] **See** 23 Pa.C.S.A. § 2511.  While the court determined CYF established grounds for termination under Section 2511(a), the court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] CYF also appealed the denial of its termination petition. **See** 1223 WDA 2020. That appeal is separately listed before this panel.

[2] We observe the court also terminated the rights of C.A.D., who was married to Mother at the time of Child's birth, but whose biological parentage was ruled out by genetic testing.  CYF also filed a termination petition against the unknown father, which the court granted.  Those terminations were not appealed.

denied CYF's petition after finding CYF failed to demonstrate that termination best served Child's needs and welfare under Section 2511(b). After careful review, we affirm.

The facts pertinent to our disposition are these: Child was born in 2013 in Tennessee. He tested positive for illicit drugs at birth, and the local social services agency removed Child from Mother's care. While in Tennessee, Child was placed with Maternal Grandmother and in foster care. The family eventually relocated to the Pittsburgh area.

The family came to the attention of CYF in the Summer of 2017, when Child was four years old, after Mother had several incidents involving the police. Following one such incident, Mother was admitted to the hospital where she tested positive for benzodiazepines and cocaine. CYF obtained an emergency custody authorization and placed Child into the foster home where he now resides.

Mother stipulated to a dependency adjudication in July 2017. The court ordered a family service plan to aid Mother's reunification with Child. The goals of the reunification plan included, ***inter alia***, housing, mental health treatment, and visitation; but the primary goal was Mother's sobriety. Between July 2017 and August 2020, the court conducted permanency review hearings approximately every three months.

The trial court found Mother's overall compliance with the family service plan to be moderate, and that Mother's progress ebbed and flowed. Specifically, Mother completed therapy, obtained housing, and managed her

medication during the dependency case. Because Mother had achieved sobriety for months at a time, the court ordered substantial visitation, including overnights and unsupervised visits. At one point, those visits occurred at least three days per week.

However, Mother's progress was always impeded by drug relapses. And apart from her substance abuse issues, Mother's ability to parent was also impeded by her mental health issues; she was diagnosed with borderline personality disorder and bipolar disorder. The court also observed tensions between Mother and the foster mother, who alleged Child was mistreated by Mother; the allegation was eventually deemed unfounded. Mother requested that CYF pursue placement options with Mother's family in Alabama. The court ordered CYF to submit an interstate compact to pursue these options, but Mother's family ultimately decided not to make themselves a placement resource.

Child displayed behavioral issues when he was initially placed with the foster family, but after therapeutic intervention Child did well in their care. Over the course of the dependency case, the court ordered several evaluations with psychologist Beth Bliss, Ph.D. Eventually, CYF petitioned for the involuntary termination of Mother's rights in January 2020. Meanwhile, with the onset of the Covid-19 pandemic, Mother's visits became virtual. The hearing was twice continued before the court ultimately held the proceeding on October 15, 2020, approximately 39 months after the court adjudicated Child dependent.

At the conclusion of the termination proceeding, the court determined CYF met its burden under Section 2511(a) of the Adoption Act – the first step of the bifurcated analysis. However, the court concluded CYF had not demonstrated that termination would best serve Child's needs and welfare under Section 2511(b). In reaching this determination, the court relied largely upon the expert testimony of Dr. Bliss. The court denied CYF's termination petition.[3] Child timely filed this appeal and presents the following single issue for our review.

> Whether the trial court abused its discretion and/or erred as a matter of law in denying the petition of [CYF] to involuntarily terminating the parental rights of Mother after CYF proved by clear and convincing evidence that termination of Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S.A. § 2511(b)?

Child's Brief at 6.

We begin with our well-settled standard of review of termination cases:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness,

---

[3] Immediately following the termination proceeding, the court conducted a permanency review hearing pursuant to 42 Pa.C.S.A. § 6351. By agreement of the parties, the court incorporated the testimony of the termination proceeding into its permanency review. CYF appealed the goal change, *see* 1224 WDA 2020, but Child did not.

partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.,* 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court found that statutory grounds for termination existed under Section 2511(a)(2), (5), and (8).  Mother did not appeal that finding, and thus the first step of the bifurcated analysis is settled.  The issue here is the second step of the termination analysis, whether CYF met its burden under Section 2511(b), which states in relevant part:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

medical care if found to be beyond the control of the parent. […].

23 Pa.C.S.A. § 2511(b).

This Court has explained that:

[S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (Observing the "immutable psychological truth" that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent."); *and see K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert

testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

In the instant matter, the court noted two primary reasons for denying termination under Section 2511(b): the court found compelling the expert testimony of Dr. Bliss, who did not recommend termination; and the court found lacking the evidence offered by CYF in favor of termination.

Dr. Bliss testified that the foster home provided Child with a safe, positive placement, where Child's needs were met. She also stated that removing Child from the foster home would cause the same negative effects as severing the parental bond between Mother and Child. Dr. Bliss ultimately opined that termination would not be in Child's interests, and she recommended permanent legal custodianship. ***See*** N.T., 10/15/20, at 78-79. She explained why the best situation for Child would be to stay in the foster parents' care, while having ongoing contact with Mother:

> So with children, obviously we don't know what will happen, but we know what research shows can happen to children. So with children who have a strong bond or attachment and that is severed, whether that be through death or termination of parental rights or a parent leaving and never having contact with the child again, it can do multiple things. It can have impact on future behavioral issues, emotional

> issues. There is that sense of parental rejections or potential internal blame for that. In addition to that, it can have impact on how they attach or relate to people later in life. That is much more the case for younger children, but with [Child] **he has a strong positive bond** with [Mother] and she was initially his primary attachment. He's obviously formed a strong primary attachment now to [the] foster parent as well. But severing that relationship could impact his ability to attach or relate to others later in his life.

*Id.* at 89 (emphasis added).

Dr. Bliss testified that Child turned to Mother for comfort and "as his secure home base, which you'll see as children with attachments." *Id.* at 93; *see also id.* at 70. She also testified that Child was protective of his Mother. *Id.* at 70. Dr. Bliss explained how she witnessed the strength of the parental bond: "My opinion is that their bond is strong enough and in place enough. […] It's there. It's stable. It's consistent. It hasn't been impacted by the fact that they weren't having in person visits [due to Covid-19 precautions]." *Id.* at 92.

Thus, relying on the testimony of Dr. Bliss, the court explicitly found that the bond between Child and Mother was positive, and that Mother was a source of comfort and security for Child. The court also found that this bond was so beneficial, that its severance would be destructive. Although Mother's inability to parent meant that she might not be able to serve Child's physical needs, the court found the bond between them served Child's emotional needs, which are also necessary to a child's development and welfare.

Not only did the trial court find the testimony of Dr. Bliss to be persuasive, but the court also determined, by contrast, that CYF failed to meet

its evidentiary burden. *See* T.C.O., 12/14/20, at 18. The court noted CYF did not offer any witness testimony to contradict Dr. Bliss's expert opinion. The caseworker did not testify to his observations between Child and Mother or between Child and the foster parents. CYF did not call other witnesses who might have testified about the bond. No one asked the foster parent about the foster family's relationship with Child, or what they observed between Child and Mother. No one called Child's therapist to testify about the relationship Child had with Mother and the foster parents. *See id* at 25-26*.*

On appeal, Child does not directly challenge the court's bond determinations, so much as he maintains that the court failed to place its bond determination in the appropriate context. Child restates our aforementioned precedents to reiterate that the bond is just one factor the court must consider in its Section 2511(b) analysis, that the court must also consider the bond between the Child and the foster parents, and that the existence of a bond will not automatically defeat termination. *See* Child's Brief at 54-55.

In particular, Child relies on *K.K.R.S.*, *supra*, where we noted that "bonding cannot be one direction only – that of child to the parent – but must exhibit a bilateral relationship […]." 958 A.2d at 534 (citation omitted); *see also* Child's Brief at 53-54. There, for instance, we cautioned that even abused children have an emotional, albeit unhealthy, bond with their abuser. *K.K.R.S.*, 958 A.2d at 535.

Although the parent's illicit drug use was a factor in both cases, the instant matter is distinguishable from *K.K.R.S.* Here, Mother demonstrated

her commitment to the Child by her continued efforts toward accomplishing the family service plan goals. Moreover, the bond here was "stable," "consistent," and "positive." *See* N.T., at 89, 92. Whereas, in *K.K.R.S.*, the "record [was] devoid of any evidence tending to indicate appellant had a positive effect on her children's lives." 958 A.2d at 534. Perhaps the most consequential distinction between this matter and *K.K.R.S.* is the disposition of the appeals. In this case, the trial court *denied* termination. In adherence to our deferential standard of review, we will not find an abuse of discretion merely because the record also supports a different outcome. *See T.S.M.*, 71 A.3d at 267. We reiterate that trial courts warrant our deference, because they have observed the parties first-hand and over the course of multiple hearings. *Id.*

Notably, Child also cites *T.S.M.* for the proposition that the trial court had to consider whether Child has a bond with the foster parents. *See* Child's Brief at 54. Indeed, our Supreme Court has said such a consideration was common sense. *T.S.M.*, 71 A.3d at 268. But we fail to see how Child's argument is a prevailing one, at least in this case. Here, the court *did* consider Child's bond to his foster family. Dr. Bliss also testified that Child would experience the same traumatic effects if his bond was severed with them, just as he would if his bond with Mother was severed. But Child's close relationship with the foster family is certainly not a basis for reversal. If anything, Child's bonds with both his foster parents and his Mother also supports the trial court's decision to deny termination in favor of permanent legal custodianship.

Ultimately, we conclude the trial court did not abuse its discretion when it found CYF provided insufficient evidence to demonstrate termination would best serve Child's needs and welfare under Section 2511(b). Although the record might have supported a different outcome, this is not a basis for reversal. In our review, we find the court's determinations were supported by the record, and its decision was not manifestly unreasonable.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2021